UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA LAMB,<br><br>      Plaintiff,<br><br>-against-<br><br>NRAD MEDICAL ASSOCIATES, P.C., BLUE DOT HOLDINGS, LLC, MERIDIAN IMAGING GROUP, LLC, and NYU LANGONE MEDICAL CENTER<br><br>      Defendants. | Case No. 17-cv-1181<br><br>**COMPLAINT** |

## INTRODUCTION

  1. This civil rights action challenges NRAD Medical Associates, P.C. ("NRAD"), Blue Dot Holdings, LLC ("Blue Dot"), Meridian Imaging Group, LLC ("Meridian"), and NYU Langone Medical Center ("NYU")'s failure to provide accessible medical equipment at nine health care facilities in Queens and Nassau County, New York. In so doing, Defendants turn away patients with mobility disabilities, put the safety of their patients with mobility disabilities at risk, and provide them with health care that is not as good as the service they provide to people without disabilities. Persons with mobility disabilities are entitled to full and equal access to Defendants' health care services under the Americans with Disabilities Act ("ADA"), and Defendants are violating that law.

  2. The Americans with Disabilities Act requires medical practitioners to provide medical services to patients with disabilities using accessible medical equipment. *See, e.g.*, U.S. Department of Justice Civil Rights Division Disability Rights Section & U.S. Department of Health and Human Services Office for Civil Rights, *Americans with Disabilities Act: Access To Medical Care For Individuals With Mobility Disabilities* (2010), *available at*

-1-

https://www.ada.gov/medcare_ta.htm. Such equipment is often height-adjustable and/or has padded, adjustable restraints and bars, and can include examination beds, stretchers, and tables; procedure and examination chairs; weight scales; radiology and mammography equipment; and lifting and transfer equipment. Mammography machines, for example, must be height-adjustable for patients who cannot stand up to use them. Examination tables must be height-adjustable to facilitate patients' transfer onto them from out of wheelchairs, and need padded safety bars and restraints to prevent patients with paralysis or spasticity from falling off or being bruised.

3. Inaccessible equipment can create safety risks, and if only inaccessible equipment is offered, patients cannot receive a medical evaluation as thorough as those given to patients without disabilities.

4. Inaccessible equipment can also result in the denial of treatment when providers do not perform diagnostic procedures due to the lack of appropriate equipment or, as was the case here, when a provider will not see a person with a disability at all.

5. Plaintiff Sandra Lamb lives with a mobility disability. When she sought an ultrasound at Defendants' facilities, she was turned away. When the Long Island Center for Independent Living ("LICIL") advocated on her behalf, Defendants ignored them.

6. By failing to make its programs and services accessible to patients with disabilities, Defendants perpetuate a two-tiered, discriminatory system of health care, whereby people with disabilities are denied care, or receive substandard, inferior medical treatment, which jeopardizes their health and well-being.

7. Defendants' ongoing practice of systemic discrimination denies Plaintiff her rights under federal, state, and local statutes, including the "full and equal enjoyment" guarantee of Title III of the Americans with Disabilities Act ("ADA"); the "program access" requirement

under Section 504 of the Rehabilitation Act ("Rehabilitation Act"); and Defendants' obligations under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

8. Defendants have been informed that their failure to provide medical equipment violates the Americans with Disabilities Act. To date, Defendants have failed to take any action to remedy the violations.

## JURISDICTION

9. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* This Court has subject matter jurisdiction over the Rehabilitation Act and ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

10. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. All parties are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

12.     Plaintiff Sandra Lamb resides in Hicksville, New York.  She has used a wheelchair for mobility since becoming quadriplegic as a result of a spinal cord injury at age thirteen.  Ms. Lamb is a college graduate and has worked as a mentor for other people with disabilities.  She is a qualified individual with a disability within the meaning of all applicable statutes.

13.     Defendant NRAD Medical Associates, P.C. is a private New York domestic professional corporation that operates approximately nine medical facilities in Queens and Nassau County, New York.  It offers medical services related to radiology including MRI, CT scans, nuclear medicine, mammography, general and biopsy ultrasound, x-ray, and echocardiograms.  Defendant NRAD is a recipient of federal financial assistance.

14.     NRAD filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 7, 2015 in the United States Bankruptcy Court for the Eastern District of New York, case number 15-72898 (LAS), and has continued in the operation of its business and the possession of its properties.  Until June 1, 2015, NRAD operated directly a regional radiology imaging practice (the "Imaging Practice") and a regional radiation therapy practice through 16 offices throughout Long Island and Queens, New York.

15.     Blue Dot Holdings, LLC is a private domestic limited liability company located in Nassau County, New York.  Defendant Blue Dot is a wholly owned subsidiary of NRAD.

16.     Meridian Imaging Group, LLC is a private domestic limited liability company located in Nassau County, New York.  Blue Dot holds a 52.8875 percent interest in Meridian.  The balance of the interest in Meridian is held by Affiliated Imaging Group, LLC ("Affiliated").  Affiliated is not under the common control of or by NRAD, Blue Dot or Meridian.

17. Through a series of transactions effected on or about June 1, 2015, NRAD purported to transfer, among other things, substantially all of its assets in the Imaging Practice to defendant Blue Dot. Blue Dot, in turn, purported to transfer the Imaging Practice assets to defendant Meridian.

18. As part of these transactions, Meridian executed a promissory note to be paid over four years in the amount of $600,000 in favor of Blue Dot and granted Blue Dot a security interest in support thereof in certain equipment purportedly transferred by NRAD to Blue Dot. Blue Dot thereafter purportedly assigned its interest in the secured promissory note to NRAD and directed Meridian to make all payments due thereunder to NRAD.

19. Defendant NYU Langone Medical Center ("NYU") is a private, not-for-profit academic medical center affiliated with New York University. NYU offers medical services through hundreds of locations throughout the New York metropolitan area and also encompasses the New York University School of Medicine. NYU offers imaging services at locations in Manhattan, Long Island, Queens, Westchester, Brooklyn, and Staten Island.

20. Through a certain license agreement relating to the Imaging Practice, Meridian furnishes to New York University School of Medicine, among other things, clinical and radiology services to patients. In connection therewith, NRAD employees provide nursing services to NYU's patients. NYU pays Meridian for the nursing services, and Meridian remits those funds to NRAD to pay the nurses. Meridian otherwise operates the Imaging Practice as the indirect transferee of NRAD.

21. As of February 2017, the nine extant NRAD locations are listed on NRAD's website as: NYU Langone Radiology—NRAD, Lake Success, Suite 101; NYU Langone Radiology—NRAD, Lake Success, Suite 104; NYU Langone Radiology—NRAD, Lake

Success, Suite 204; NYU Langone Radiology—NRAD, Lake Success, Suites 301B & 301C; NYU Langone Radiology—NRAD, Garden City; NYU Langone Radiology—NRAD, Hempstead; NYU Langone Radiology—NRAD Hillcrest; NYU Langone Radiology—Northern Breast & Women's Imaging; and NYU Langone Radiology—NRAD, Woodbury. NRAD continues to have control over daily operations at these sites.

22. NYU is providing its name to NRAD's facilities. NYU participates in the operation of these nine facilities by directing its other patients to them via phone referral and by advertising them on its own website under its directory of imaging services locations titled "Our Locations." NYU has some direct or indirect control over these sites and receives some direct or indirect financial benefit from their operation.

23. NRAD exercises management control of Meridian's business operations and policies, including those pertaining to the Imaging Practice. Alternatively, NRAD exercises such control indirectly through Blue Dot, and Blue Dot, through Meridian.

## PLAINTIFF'S ALLEGATIONS AND HARM

24. Plaintiff Sandra Lamb resides in Hicksville, New York. She uses a wheelchair for mobility and also uses a personal care assistant. She needs accessible medical equipment, including adjustable-height tables and transfer equipment, to benefit fully from medical services. Her primary care physician, gynecologist, and urologist all provide such equipment and related services.

25. In or about July 2016, Ms. Lamb was instructed by her doctor to obtain an ultrasound of her kidneys due to concern she might be experiencing kidney failure. Because Defendants had a location on Stewart Avenue in Garden City close to her home, Ms. Lamb called the NRAD Central Scheduling phone number to schedule an appointment.

26. When Ms. Lamb called the NRAD Central Scheduling phone number, she indicated that she lives with a disability and specifically asked whether the Stewart Avenue location had an adjustable-height examination table with padded bars.

27. Defendants' employees at the Central Scheduling number told Ms. Lamb they needed to investigate whether they could accommodate her needs and would call her back. After a few days, Ms. Lamb called Defendants to follow up; Defendants said they had called every relevant location and no one had the accessible equipment she needed. (Ms. Lamb also called every relevant location and was told the same thing.) Defendants' employees recommended that Ms. Lamb instead contact her doctor to obtain the ultrasound at a hospital.

28. Ms. Lamb explained that civil rights laws require medical providers to offer accessible medical equipment. Defendants' employees responded that their practice had recently been acquired by a new owner and that this "reset the clock" for their obligations under the disabilities laws. However, this is an inaccurate statement of the law.

29. Ms. Lamb's experience with Defendants' services left her feeling upset and frustrated about the obstacles preventing her from obtaining medical care. The difficulty in finding an accessible facility caused a month-long delay in arranging the kidney sonogram. This delay caused her stress and panic attacks as she became increasingly concerned that her health was at risk.

30. On or about August 5, 2016, LICIL, Plaintiff's local independent living advocacy center, wrote a letter to Defendant NRAD's administrative offices about Ms. Lamb's experience. The letter explained that failure to provide accessible medical equipment violated the ADA, and enclosed the technical assistance guide *Americans with Disabilities Act: Access to Medical Care for Individuals with Mobility Disabilities* (2010), *available at*

https://www.ada.gov/medcare_ta.htm. The letter also asked Defendant NRAD to contact LICIL within 10 days advising when and how it planned to rectify this violation of law. To date, none of the Defendants have responded to this request.

31. The Defendants' discrimination of Ms. Lamb hindered her ability to obtain safe, quality medical care because of her disability. Ms. Lamb had a right to make an appointment at NRAD as quickly and conveniently as NRAD's patients without disabilities. She deserved to receive care at the same high diagnostic and professional standards as anyone else. Instead, because of her disability, Ms. Lamb had to make numerous fruitless calls over several days before NRAD ultimately denied her health care services entirely. Ms. Lamb has the right to the same high-quality health care that others receive at NRAD, but instead she received no health care at all.

32. NRAD's discrimination caused Ms. Lamb great emotional distress at a time when she was already concerned that her health was in peril. The Americans with Disabilities Act had been in force for over a quarter of a century by the time Ms. Lamb called NRAD, but NRAD acted as if the protections of that statute did and do not exist.

33. Further, NYU personnel staffing NYU's central Imaging Services phone number ((212) 263-8868) were unable to provide information to callers who inquired as to which NYU imaging services locations have accessible medical equipment. NYU's website also does not list which, if any, of their imaging services locations have this equipment. (All locations should offer such equipment.) With this information available neither through NYU's central Imaging Services phone number nor its website, NYU patients with disabilities who require accessible medical equipment presumably must attempt to locate such equipment through the same needlessly-prolonged process that Ms. Lamb endured when she called each individual NRAD

location.  This too constitutes provision of health care services at a lesser standard than what patients without disabilities receive from NYU-Langone.

34. Ms. Lamb would seek future medical care at Defendants' facilities if they were wheelchair-accessible and provided accommodations for her disability, including accessible medical equipment.

## FIRST CAUSE OF ACTION

### Violation of the Americans with Disabilities Act

35. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

36. Title III of the Americans with Disabilities Act ("ADA") prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

37. Plaintiff is an individual with a disability within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36.  She has an impairment that substantially limits the major life activities of walking, standing, and/or bending.  42 U.S.C. § 12102; 28 C.F.R. § 36.104.

38. Defendants' facilities are the professional offices of health care providers and are therefore places of public accommodation within the meaning of the ADA.  42 U.S.C. § 12181(7)(F) ("Public accommodation" includes a "professional office of a health care provider, hospital, or other service establishment").

39. Defendants collectively are the owners, operators, lessors, and/or lessees of the medical services provided in their names and are therefore places of public accommodation

within the meaning of the ADA. 28 C.F.R. § 36.104 ("Public accommodation means a private entity that owns, leases (or leases to), or operates a place of public accommodation.").

40. Defendants have discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendants. 42 U.S.C. § 12182(b)(1)(A)(i).

41. Defendants have discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendants in a manner that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

42. Defendants have discriminated and continue to discriminate against Plaintiff by failing to modify their policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with physical disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

43. Defendants' conduct constitutes ongoing and continuous violations of the ADA. Unless restrained from doing so, Defendants will continue to violate the law. Through their conduct, Defendants have caused and will continue to cause Plaintiff immediate and irreparable injury.

44. Plaintiff is entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. §§ 12188(a)(1) (citing 42 U.S.C. § 2000a-3(a)), 12205.

## SECOND CAUSE OF ACTION
**Violation of Section 504 of the Rehabilitation Act**

45. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

46. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

47. Plaintiff is a qualified individual with a disability in the United States pursuant to 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102.

48. Section 504 defines "[p]rogram or activity" in part as "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii). Defendants are a program or activity within the meaning of the Rehabilitation Act.

49. Defendants have received federal financial assistance at all relevant times.

50. Through the acts and omissions alleged herein, Defendants have, solely because of Plaintiff's disability, excluded Plaintiff from participation in Defendants' programs and activities and denied Plaintiff the benefits of Defendants' programs and activities, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794, *et. seq.* and the regulations promulgated thereunder.

51. Defendants' acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

52. As a proximate result of Defendants' violations of Section 504, Plaintiff has been injured, and will continue to be injured, as set forth herein. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

53. Plaintiff is entitled to injunctive relief and reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C § 794a.

### THIRD CAUSE OF ACTION
**Violation of the New York State Human Rights Law**

54. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

55. The New York State Human Rights Law ("NYSHRL") provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

56. Under the NYSHRL, a "disability" is "a physical . . . or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function." Plaintiff is a person with a disability within the meaning of the NYSHRL.

57. The term "place of public accommodation" in the NYSHRL includes "dispensaries, clinics, [and] hospitals." N.Y. Exec. Law § 296(9). Defendants are places of public accommodation within the meaning of the NYSHRL.

58. "Discriminatory practice" is defined in the NYSHRL to include a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. N.Y. Exec. Law § 296(2)(c)(i).

59. By the conduct described above, Defendants have committed unlawful discriminatory practices against Plaintiff and have violated the New York State Human Rights Law.

60. Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL and, unless restrained from doing so, Defendants will continue to violate said law. This conduct, unless enjoined, will continue to inflict injuries and Plaintiff will suffer irreparable harm in that she will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the programs and services provided by Defendants as well as reasonable accommodations which would provide her the opportunity to benefit from these programs and services.

61. Defendants' discriminatory conduct is ongoing, and consequently, Plaintiff is entitled to injunctive relief.

## FOURTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law

62. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

63. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a), provides, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person the accommodations, advantages, facilities, or privileges thereof . . . ."

64. Under the NYCHRL, a "disability" includes a physical or medical impairment, including impairment of the neurological, musculoskeletal, and/or cardiovascular systems. Plaintiff is a person with a disability within the meaning of the NYSHRL.

65. The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kinds are extended, offered, sold or otherwise made available." NYCHRL § 8-102(9). As such, Defendants are a covered place or provider of public accommodation under the NYCHRL.

66. Under NYCHRL § 8-107(15), ". . . any person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity . . . ."

67. By the acts and conduct described above, Defendants have committed unlawful discriminatory practices against Plaintiff, failed to make reasonable accommodation for Plaintiff's known disability, and violated the New York City Human Rights Law.

68. Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL and, unless restrained from doing so, Defendants will continue to violate said law. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law. Plaintiff will suffer irreparable harm in that she will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the programs and services provided by Defendants as well as reasonable accommodations which would provide her the opportunity to benefit from these programs and services.

69. Defendants' discriminatory conduct is ongoing, and consequently, Plaintiff is entitled to injunctive relief and reasonable attorneys' fees and costs. NYCHRL § 8-502(a), (g).

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**

70. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

71. Plaintiff contends, is informed, and believes that Defendants deny failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Human Rights Laws of New York State and New York City.

72. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendants:

73. That Defendants be enjoined from violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Human Rights Laws of New York State and New York City;

74. For an Order and Judgment finding and declaring that Defendants' acts, omissions, policies, and practices as challenged herein are unlawful;

75. For an Order and Judgment requiring that Defendants purchase and provide accessible medical equipment as described in the Department of Justice technical assistance guide *Americans with Disabilities Act: Access To Medical Care For Individuals With Mobility Disabilities* (2010), *available at* https://www.ada.gov/medcare_ta.htm, in all its facilities;

76. For an Order and Judgment requiring Defendants institute policies, procedures and training appropriate to the provision of medical care to patients with mobility disabilities.

77. For an award of Plaintiff's reasonable attorneys' fees and costs; and

78. For such other relief that the Court may deem just and proper.

Dated: March 2, 2017
New York, New York

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

*Christina Brandt-Young*

_____
Christina Brandt-Young (CB6144)
Michelle Caiola (MC2110)
Rebecca C. Serbin (RS0096)
DISABILITY RIGHTS ADVOCATES
675 Third Ave., Suite 2216
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636

*Attorneys for Plaintiff*